Case 317-3654. People have been in Illinois at the time. I need to provide more information to Justice Bowden at a later date in the proceedings. My name is Nicholas Atwood and I represent the people of the city of Illinois in this matter. The primary issue before the court today is whether the trial court erred when it granted the defendant's motion to express evidence on two bases. That no traffic violation occurred and that the officer did not have an objective reason to believe that a traffic violation had occurred to justify the stop under Highway North Carolina. At issue here was the defendant's failure to signal a lane change under 804D of the Motor Vehicle Code. And what we have here is a situation where the defendant is traveling a single westbound lane. While traveling in that westbound lane, a new lane began to emerge from the defendant's right side fog line. So as the defendant traversed this particular region of the highway, his original westbound lane remained the full lane while a new dotted lane appeared to create a division of lanes in the two full westbound lanes. The fog line remained on the right side of the newly created right-hand lane. And so as the defendant, in this case, as he drove straight through, he drove directly across the newly created dashed center line that created the division of lanes. He then went to the fog line, correct? But his original lane of travel, if he had remained in it, would have kept him in the left-hand side, thereby moving him... He was on the right-hand side of the road. He kept on going in that direction. He drove directly straight through, but he did it through the creation of the new lane. And was there any sign above? There was a sign that was ahead of the road where he had passed that indicated that there was a new lane coming up that was being created. And so an issue here is the trial court's ultimate ruling claiming that no traffic violation occurred. In that ruling, the trial court stated, and I'll quote, The court can honestly say it has probably driven this roadway a thousand times over the course of living in this area. And I don't think any of those times, not only have I traveled the exact same way that the defendant traveled, staying next to the fog line, the court has never considered that to be a lane change. And so the people submit to you, this is an improper judicially noticed fact. Because there was no evidence presented in here on how the trial court navigates the road. The evidence that was presented at the trial showed that the arresting officer believed that the defendant had committed a traffic violation based on his understanding of 804D and when a signal was required. As well as other provisions of the traffic codes, most notably 511-709 that we cited in our briefing. 511-709 requires an individual to stay in their lane, in their lane roadway, until it is safe to move. And 804D requires you to signal when you make that lane change. How far into the double lane did he travel before he made his right turn, if you will? Well, the officer stated it took him several seconds, that he was essentially straddling the line. He was not, I would say, probably less than 100 feet. But I think the issue is less relevant as far as distance, but his original lane was the only full lane available to him. And therefore, when he transitioned by just driving straight through, he was essentially in two lanes at the same time without having signaled that transition. In other words, he continued to go with his left part of his car along the side of the road, right? On that left side of the road. Well, he was, the way he traveled, his right side of the car was where the fog line was. I'm talking about his right side of the car was where the fog line was, right? He continued to be like that as he drove along. Correct, yeah, but the new lane emerged in front of him. And the defendant characterized it as a new lane appearing beneath him. But it's clear if you look at the video and the pictures of the officer aren't all that helpful. But as you can see, this new striped lane starts from the right-hand fog line. And it goes into an arc and dashes out to create that new lane. So clearly, as the defendant approaches this section, he sees that there's a new striped line that's available, yet he just drives straight through it. And so that's our position with trial court error because it said, look, I've heard this a thousand times. That's how I always do it, so it must be okay. Well, that's not okay. That's an improper judicially noticed fact. Defendant argues that this is a proper judicially noticed fact because it's geographic in nature. But this isn't like the location of a particular bridge or a bend in the road, which is easily ascertainable by a mile marker. The trial judge is saying the manner in which this defendant drove is the same as I do. Therefore, I don't believe that's against the law. And so that's a subjective belief by the trial court. And it's contrary to the provisions of the Motor Vehicle Code. So not only was it improper to do that. Well, what is it contrary to? I mean, first off, this is a dotted line. It's not a solid white line, is it? But it does create a separate lane. There's no – it doesn't lay below it. Eventually it does, yeah. It does create a new lane. But as I said, I think the important factor is his original lane was always the full lane. Just because you kind of got to jog over to the left a little bit to make room for the new lane does not mean that, you know, he's not transitioned the lane. Shouldn't he have turned his turn signal on to drive over to the left? I believe so, and that's what the officer said. And the right. Oh, I'm sorry. I misunderstood the question. Not to the left. If he stayed in the original lane, he's committed a traffic violation. By going over to the – by staying on the right, he drove through what has created the new lane. And he should have signaled in order to do that. And that's what the officer testified, his belief of 804B read in concert with other provisions of the traffic code required. And so I cited some additional cases in this sort of analysis. So that was contrary to common sense, right? So in other words, you would have to move over to the left. Well, the lane requires – Because he was at the right, he continued to go right. Correct. He stayed driving straight, but – He stayed driving straight, so – But I don't – So he had to make that signal rather than move over to the – because you're talking about moving. Following the lane as it – So you'd have to move and not make a turn signal and do that. He would not have to do that because he was already in that original lane. And actually he would have to make a move over to do that. Well, once he was already in the full lane – because as I said, it doesn't just create a full lane. We've got to kind of make space from no space. So there's about, I don't know, maybe 100 or 150 feet at most where that new dotted line is cutting from the right fog line to create the new lane. And so he should have remained in the only full lane that was available to him, which was the original lane he was in. But instead, he just simply drove straight through what was becoming the new right-hand lane where that lane had been striped off. And so I understand it's confusing to try to explain this. It's a – I know you're honored to look at the video. I believe the officer's squad car video. It does show it well. As you see the officer approach, it's clear that the striped line is encouraging you to stay with your original lane, and it's creating a new lane for two westbound lanes. Well, if you're – there's a fog stripe, right? Yes. The fog line on the right. And so if he's driving down the road and he's using the fog stripe as his point of reference, then he stays right next to the fog stripe as this new lane emerges. Correct? Correct. Look, I mean, we can talk about the 400-pound gorilla. This was clearly a pretense stop, which the U.S. Supreme Court says is just fine. But the question is would – and I viewed the video. If there were no drugs involved or anything else like that – and you've seen the video, right? Yes. Can you imagine any court in the world convicting this guy if that was the only charge? I actually can. In the fourth district of this state, they did the very same thing with people who do this. That case is very similar. It's a little bit different, isn't it? It's going the other way. Well, that's – it's one lane and two lanes. Yeah, but it's going the other direction, isn't it? As far as – It's not going this way. It's going this way. Well, I believe there's a slight difference there, but it's a very similar situation, and it illustrates the point that when new lanes are created, you do need to signal, at least according to the fourth district. But even if, you know, the court doesn't believe that this would be a situation where you require the signal, I believe that the case clearly shows that the officer had an objectively reasonable belief that a signal would be required in this situation. As the trial court stated, it was a confusing situation at best whether or not a signal would be required. And the officer testified that he believed, based on reading the traffic code as it stands, based on his training in the traffic code, that a violation had occurred. And I relied on IND North Carolina's Supreme Court case in that we're inclined. The officer's objective belief that a traffic violation had occurred was completely wrong. It was a brake light situation. And the officer believed that you had to have X number of brake lights activated in order to be lawful, but the statute clearly said the opposite. This is not a situation where it's so cut and dry. This is a situation where the officer is following behind the vehicle, he's observing the vehicle's behavior, and he's considering how multiple parts of the motor vehicle code work together in order to determine whether or not this person had violated it. So even if you find that... So he's thinking about all this stuff while he's driving along. As he testified, that's what he believed. He believed that based on 709 and 804 read together, that a signal would be required in this situation. And I think the trial court area would have found that that was not a reasonable conclusion for him to make, because as he was... I cited in the brief, he was quizzed extensively about this by defense counsel. And if you compare the officer's answers to the provisions of the code, his answers are correct. So he clearly understood the implications of 804D and 709. It was perfectly reasonable that he was capable of making that assessment on the fly while in the vehicle behind the defendant. And so I think based on that, even if you find that this isn't an improper turn signal situation, I think it's enough to have a reasonable suspicion to make a traffic stop. And what happens from there is all non-suppressible as far as evidence goes. He's got probable cause. He's got a reasonable suspicion. But I think still we have to consider the fact that as far as the judicial notice argument is concerned, regardless of what provision of the traffic code we're talking about, the court clearly relied on information that was not presented at trial or at the suppression hearing. The court said, I drive this way, so this is the right way to do it. Well, if we put that... Even if we put the trial judge's comments aside and say, okay, but we can look at the video and have and see for ourselves. And when it comes to this officer's reasonableness, we look at an objectively reasonable officer. It's not a subjective test. It's an objective test. Correct? Correct. And so would an objectively reasonable officer believe that this was a traffic violation for failure to signal at this point? I think an officer would because if you look at Hackett and Smith, or other cases I cited, they're not the exact same situation. But we're talking about six inches across the line. That's a valid reason to pull over somebody. One mile per hour over the speed limit is a valid reason to pull someone over. So all these have to go to the objective beliefs of the officer. And this officer knows the code. I mean, we cannot ignore the fact that it's not like most of these cases where the officer completely misunderstands the provisions of the code. 804D does not say whether or not you have to signal when you approach a lane division or a lane merger. That statute has been termed ambiguous. So how many inches was he over the first dotted line he hit? Well, he just drove straight through. So at some point, most of his vehicle was in both lanes at the same time without doing any kind of signal. And so that's clearly not proper under 804D because the point of the traffic code is to ensure safety. We want drivers to signal. Which way are you going to go? It wasn't the case here, but if this had been more traffic involved and he just chooses to go straight through the middle, that could cause an accident because the person behind him may have thought he was going to stay in the left lane and go straight and then move around. So when we see these lines painted on the road, they're not painted for nothing. They're painted to mark where you should move with the flow of traffic. And I understand this isn't the most natural lane creation. So you don't have to signal that you're going left. You have to signal that you're going right. Correct, because the left lane is always a full lane. And 709 requires you that you must stay in a roadway that's laned for traffic. And that's a full lane. And the right lane, for several seconds, was not a complete lane. It became a complete lane after three or four seconds. And so it's clear that because he left the only full lane available to him across over the dotted line, he should have signaled that change. And I think even if we disagree with that, I think that's reasonable for the officer to believe. As you encounter two lanes where the statute doesn't say you must or must not signal, he made an honest mistake here. And that's what I believe. Thank you. And that's what I believe where the trial court erred in finding that that was not a reasonable mistake. And again, to briefly conclude on the judicial notice aspect, it's clear there was prejudice here because the trial court based its ruling on the way it negotiates this particular stretch of roadway. And so that fact wasn't presented during evidence. The people have no opportunity to object to that or to try to rebut that through testimony of any kind. The judge simply said it after the evidence portion of the hearing had been presented and right before he was going to begin his ruling. There was actually sort of a confused situation where the judge started to give his ruling before the parties had actually had a chance to make argument. But as we know, arguments are not evidence. And so by that point, the judge's decision had been made, and they made arguments purely for appeal purposes. But we review the trial court's judgment, not its reasoning, correct? Correct. At the end of the day, what the trial judge said or didn't say is pretty much irrelevant. It's did he rule correctly. I think that is the situation normally until we consider the fact that this is the judge who's pulling out information when he's supposed to be setting these biases and his habits aside. That's under people being tied in the Supreme Court. He's not supposed to bring that baggage with him to the bench. But he clearly cited his own personal experiences, which were not part of the facts of his case. But we've got the facts of the case, though. We do have the facts based on that, yes. But if he gets the right result for the wrong reason, or not this case in particular, but if a judge gets the right result for the wrong reason, we don't reverse and say, well, your judgment was correct, but your reasoning in getting there was faulty, so do over. I think normally that's the case, but I think in a judicial notice aspect, I think it would be a distinguishing factor when it's not, here's all the evidence that the parties presented to the judge, and the judge just simply misapplied the law. We have all this record of how the judge got to there. All we have is the judge just taking information that wasn't part of this trial and talking about how he does this. And I think it clearly is analogous to the situation like in Rivita. This is a third district case. I believe it's out in McDonough County. We had a judge who was very familiar with the defense counsel and practiced many years in front of him. And the defendant in that case was saying, this guy being ineffective assistance in a post-trial motion. And the judge defends the attorney. He says, look, I've known this guy for years. I've always known him to be an excellent attorney, and I don't believe there's any merit to this. And this court found that that was clearly error because that wasn't evidence that was presented, and the court relied on evidence that was outside of the record. They reversed that, didn't they? I'm sorry? They reversed that case. I can't remember what the circuit court ruling was. I know that our court found that that action by the judge was improper. I can't remember the procedural posture of getting to this court. But this court found that action, that statement by the judge, relying on those previous facts was error. Well, I think what Judge Smith is saying is that even if we find that error, that the decision was right for other reasons. I mean, we're not telling you that, but, I mean, can we not do that? I'm not sure if a case specifically says in a context where a judge takes judicial notice. Normally, that is the general rule of courts, and I know we cite to it frequently in our briefs as far as the people are concerned. It's something I would have to look up and confirm for certain, but I do think we can show prejudice based on that because this entire ruling was based on it. It's not like there was other facts that can support that ruling  If this court determines that 804D is not ambiguous and it does not require you to signal, then you can affirm that. But if you don't reach that conclusion, the state is clearly prejudiced and we're prevented from being able to present significant evidence at trial. And they have a substantial right to completely try a case, and that includes using all the evidence that is available to them. Well, I guess the point is, I think my best guess is, and I'm not going to speak for my colleagues, but my best guess is we're all going to agree that how that judge drives is irrelevant to any issue in this case. But unlike we get a case where he's familiar with the party, and we're talking about was this a good lawyer or a bad lawyer, ineffective. But in this case, we've got a situation where we have a videotape of the squad car, and we can see exactly what happened. Right. And so even if, for example, had the judge not said that, my guess is he would still have been here saying he came to the wrong conclusion based on the law and the facts of this case. Correct? Correct. But I think even if you're correct in your analysis and the judge's reasoning is right, the officer did have an objectively reasonable belief. And even if the judge's ultimate ruling was correct, because he had that reasonable belief but yet was a mistake of law, it's still a valid stop. And I would ask this court to reverse the trial court's order suppressing the evidence and demand this matter for further proceedings. Thank you. Counsel. Good afternoon, Your Honors, and may it please the Court. My name is Amber Hopkins, and I'm with the Office of the State Appellate Defender. Here on behalf of the defendant and appellee, Mr. Justin Bowden. This case is about whether a driver is required to activate his turn signal before driving straight and entering a new lane. In the present case, Mr. Bowden is not required to signal because he was not changing lanes based on the ordinary meaning of those words. Instead, he continued to drive straight into the newly created lane, which does not require the activation of a turn signal. He did have to cross a dotted line, didn't he? Correct. But there was no lateral left-right movement, which is indicative of changing lanes. Well, sometimes roads bend. So what direction, you know, is the lane marking? The fact that you're not changing the direction of your car, you can, if the road bends and you keep driving straight, you can change lanes if the roadway turns in front of you, right? If the roadway, like if the defendant were to make a turn, an actual turn, he would have to signal under the specific language of the statute in Section 804D. It only requires a turn signal in three instances, indicating a turn, changing lanes, and coming out of a parallel park position. The issue in this case is the changing lanes portion of that language. So the defendant can continue to stay adjacent to the fog line as he was coming around the turn. Specifically, if you look to both the Illinois Driver's Handbook and Section 804A, which is in the same section as 804D, you'll see that 804A mirrors the language that you see in 804D. And it defines changing lanes as a left-right movement. So this language in 804A supports the conclusion that changing lanes is not the same as driving straight and entering into a new lane because you're not doing the left-right movement that's required for changing lanes. Additionally, I want to touch back real quick as to the state's forfeiture argument. Let me just ask you about what you just said. So imagine, if you will, you're driving down a four-lane road. You've got two lanes going in this direction, a dotted line. You're in the left lane, and the road curves to the left. Well, if you go straight, you'll end up in the right lane instead of the left lane. And don't you get the road turns? You have to stay in your lane, which might require you to turn your steering wheel to the left. And if you want to go into the right lane, you need to signal as such, right? Correct, yes. Even though there's no right-left turn, you can change lanes by going straight on a curve. It's still a lane change, right? Correct. Maybe a better phrase would be the natural progression of the roadway. The defendant followed the fog line as it was curving around. And so his signal wasn't required because he didn't turn his steering wheel to the left, which would have made him cross back over the hash marks and into the left lane. And if he did cross over the hash marks back into the left lane, it would have required a turn signal. Additionally, I'd like to talk about the state, talk about the judge's personal experiences. Justice Schmitt, you pointed out that it was irrelevant what the judge believed, but also, plain air should not be looked at in this case. Under the state's argument, the judge using his personal beliefs does not impact the state's ability to completely try the defendant in this case. It merely impacts or talks about the fairness of the underlying proceedings. And if the fairness of the underlying proceedings, and if the judge would have or wouldn't have held a certain way, wouldn't have led to the suppression of evidence. The actual remedy, if the court looked at the fairness of the proceedings, would have been a new suppression hearing, which is not an issue here. It's the suppression of the actual evidence. So this court should not look at the judge's personal beliefs. But further, the judge in that case wasn't relying on new facts to make his determination. He didn't refute any facts in the record, and he didn't add any new facts. He merely made a legal determination that rebutted the officer's legal determination and the state's theory of the case, which the judge is able to do because this case looks at it denominally. Additionally, I'd like to go down to the state-discussed theus, and then the officer's objectively reasonable mistake of law. So this court should find that Officer Glenn did not make an objectively reasonable mistake of law because it doesn't take hard interpretive work here to see that Section 804D does not require a limit change. As I previously discussed, the handbook and Section 804A should inform this court's decision that a left-right movement is required. And that left-right movement wasn't done in this case. Further, the state cites the theus to make the argument that Section 804D is ambiguous. However, theus is merely persuasive, and it's factually distinguishable from the present case. In theus, so this court need only look at Mr. Bowden's video and the topographical map that I appended to my opening brief, which shows the outlay of theus, which this court may judicially notice. In theus, the defendant came upon a portion of the roadway that widened and split, and the hash marks began in the middle of the roadway. And the defendant was then required to take a lateral left movement to get into the left lane, otherwise he would have been straddling both the left and the right lanes. That's not what happened here. Here, Mr. Bowden was following the progression of the roadway. He followed the rightmost fog line, and the hash marks came out from the right side and moved out into the middle. Although he crossed over the hash marks, he didn't make the lateral left-right movement that you would see even in theus to show that changing lanes happened. Further, the Fourth District's reasoning in theus is flawed. In that case, the court ultimately found the statute to be ambiguous because he failed to address signaling for lane changes and mergers. This determination violates the canons of construction, as the legislature could have specifically included lane divisions and mergers, but they chose not to. And this court, therefore, should not read that language into the statute. Further, the statute is not ambiguous because the state is asking this court to expand the scope of the statute. A plain reading of the statute shows that Section 804D does not require the use of a turn signal before the creation of a new lane. Officer Glenn didn't need to look any farther than Section 804D and 804A to see that a turn signal wasn't required. Despite the state's contentions that Officer Glenn accurately interpreted relevant provisions of the code, he failed to reasonably interpret the only part of the code that mattered, Section 804D. For these reasons, this court should find that Officer Glenn's stop was not a reasonable mistake of law sufficient to support a security stop, let alone probable cause. Yes? Well, let me ask a couple things. Would you agree that as far as probable cause, you know, the purpose of turn signals is to alert other people what you're going to do so nobody tries to occupy the same piece of roadway at the same time? But, that being said, police officer is, you know, half a mile behind a guy or a quarter mile behind somebody down the road, and he sees them up in front of him make a left turn, and he can see there's no cross traffic, there's no oncoming traffic, there's nobody, no hazard created whatsoever. Nonetheless, there's a traffic violation, correct? Even though there's no other traffic. When you say a left turn, do you mean... So he makes a turn, turns off into a side road. Clearly makes a left-hand turn from the roadway, but there's nobody else around other than this copper that is somewhat behind him. No cross traffic, no oncoming traffic, no pedestrians, nothing but corn stalks. But nonetheless, probable cause to stop, correct? Correct, if he did not use his turn signal. So, counsel mentioned that under the scenario you've got somebody in the same roadway you've got here, and let's suppose that guy's going 10 mile an hour under the speed limit, car behind him, and the car behind him can't stand it because he wants to at least go the speed limit, and he's thinking, assume there's no signal that he's going to occupy that right lane, and so as soon as I get that thing, I'm going to the right, and I'm going to step on it, and I'm going to go around him on the right. And yet, this car comes over, and you get a hit. Kind of what counsel was trying to describe. What about that? The reason for a signal in this case, let you know that the lane you're in has become the left lane, but you want to go to the right lane. Under looking at several provisions of the code, Mr. Bowden wasn't, he was following a thought line. There was no indication that he was going to come over to the right, make any lateral left movements, and the right side of the lane, under a reading of the other provisions of the code, is where the defendant should be unless he wants to pass. So the defendant should be on the innermost lane further. It would be confusing and could jeopardize safety concerns if the defendant were to, say, put his blinker on while he's in the right turn lane because it might signal to other drivers behind him that instead of making a lateral right movement, the only further lateral to the right movement place he could go was the ditch, or to pull his car off the road. So it might indicate to other drivers that he's taking his car completely off the road. So under safety concerns, being in the right-hand lane and not using his signal was the correct thing to do, not only under the law, but under policy concerns. If there are no other questions, I just ask this court to find, for the reasons stated in Mr. Bowdoin's brief and for those argued here today, this court should affirm the trial court's decision to suppress evidence. Thank you. Thank you. Counsel? A couple things I'd like to address that counsel mentioned. She cites the driver handbook produced by the Secretary of State. That was an evidence that was presented at this hearing, and I don't think it's proper for this court to rely on it. Moreover, that handbook specifically says you should not use this in court. It's not meant to be a legal tool to inform analysis. The provision she cites is literally teaching young drivers how to signal and change lanes. There is no legal requirement that in order for 804B to be applicable, you need to hit your signal and be moving laterally. It's just as Justice Schmidt pointed out. You can drive straight and yet change lanes because physics will sometimes narrow the road in front of you, or in this case, widen the road in front of you. And the other thing counsel mentioned is that it would be very confusing to drivers if he were to signal that he's going to the right-hand side. I disagree. While I don't know anybody who would think this guy must be trying to drive into the ditch purely because he's signaling, I think he's reading that as, I'm going to stay to the right here. We've got two new lanes. And I think it also is sort of, I don't know, I don't want to say absurd, but I think it's sort of contrary to logic that it would be okay to simply drive through what's clearly becoming a new lane. Like in what context can we ever drive through lanes, drive through striped lines, unless we're signaling to pass or go around someone? You can't simply drive through lines. They're there to delineate where you're supposed to go. And I think… If he did a left-hand turn signal, would that be a violation? I think it would be an abundance of caution, but not a violation, as long as he stayed in the left-hand lane. Because he's signaling either way. We're not signaling to other drivers to establish a legal conclusion. It's a heads-up. I'm going left. I'm going right. You know, be aware. That's the whole purpose of the traffic code. And the defendant advocates for you to look at 804B as if it was… Well, the road's going straight, so he's staying right. But to go left, he has to move. He has to follow the new lane. He has to actually move. To stay right, he just stays. He's not required to signal to go left. He could. But as long as he remains in the left lane, he still requires it. To stay where he is, to follow along the fog line, you're saying he should signal. But to move, actually, further out, he doesn't have to signal. Are you saying further to the right or further to the left? Further to the left. No, he does not. Because that was… So actually move around in this way, no signal. But to stay where he is, you'd have to signal. Based on the traffic code, because as I said, 804B doesn't exist in the background. You have to read these other provisions together. 709 says a vehicle shall be driven as nearly as a practical entirely within a single lane and shall not move from such lane until the driver has ascertained that it's safe. The only single lane that was available was the original single westbound lane. It moved to the left and a new lane was created next to it. That lane was always a full lane. It was available to the defendant. He disregarded the newly developing lane and just simply drove straight through it. And so that is why there was a violation in this case. The other thing I would point out briefly, counsel attached a map of the area purportedly from Theis, and she states you can take judicial notes of that. I don't believe you can. Again, that wasn't presented as evidence in this trial, and I'm not even certain that that's the proper area. That was never a fact that was tested by the adversarial nature, so I don't think that would be appropriate. And I really think that based on the evidence that was presented, even if you find that it wasn't reasonable or that it wasn't a traffic violation, Officer Glenn's mistaken belief was reasonable, and on that basis, I ask that you reverse the trial court's order on the next time for further proceedings. Thank you. Thank you, counsel. Thank you for your arguments. The court is under advisement now to take a break until tomorrow's hearings. Thank you. Thank you.  He's out. It's going to be dark when you go out there. Oh, stop. I know. Half of the kids touch anything anymore. I know. I had to tassel, I think, three years in a row. My hair lasted three days. You know, my mom wouldn't let me tassel because I still wear a stand, and she was afraid I'd get sunburned. Oh, with me, I get black. I still, the top of my ears, I get a scar from the sun. But it did wash me, and I got better after three days, too. Ha! Hey, but at least you got better. I stood all the way through except for one guy got better, because apparently we weren't doing it right. Oh, God. But when you're paying less than dinner away, you're paying more. Yeah, and we were kids. You know? Yep. None of us had ever done it before, so it wasn't like we knew what we were doing. None of us were farm kids. Oh. Anything for an extra buck. Yeah. Yeah. We tried. And it wasn't so bad getting fired, because, you know, everybody got fired, except for that one kid, so. That means you got to grow up. We actually thought it was pretty funny. Yeah. Ha, ha, ha, ha, ha. Hey, don't break it around me. You know how many kids aren't getting used nowadays? Yeah. Stop kidding me. Oh, I had the rounds with my kid when he turned 15. I'm like, you're getting a summer job. Yeah. He was pissed. And I got him the job from a friend of mine, and it was just mornings. It was like 8 to noon. So I would take him there in the morning before work, and then they had a half an hour for lunch, but I'd go pick him up, take him home. And he'd just grumble, grumble, grumble in front of them every single day. And so Friday morning, he got paid again. And when I picked him up on Friday afternoon, he had this, like, huge grin on his face, and a packet full of money. And after that, it was fine. Because he was too young to, you know, he was a 16-year-old. Yeah. And I was going to give him one of those chocolates. But then the guy said, well, I'm just paying cash, so. That is awesome. Yeah, my daughter, if you weren't in sport, like something extra, you got a job. Oh, yeah. And, yep. And I need your purse. Can you hang it out? We're done. I'm waiting for Justice Schmitt. Oh! Thank you. Oh. Thanks for looking out for me, by the way. Yeah, it's okay. We should let you know. I'm good. Thank you very much. Alright. Thank you. Alright, I'm going to wait for Justice Schmitt, and I'll see you tomorrow morning. Alright, yeah. Have a good night. You, too. Is that supposed to look like ash? Bubble gum on the band-aid? Pretty much. Pretty much. Oh, my gosh. I'll be super-glued tomorrow. Gorilla glue. Yeah! Oh, my gosh. It came right out of there. The whole piece of wood was rotting. It's sticking on it. That's good. The reason we put that on it is because it wasn't sticking. Well, you're back on now. I ain't worried about it. Not my thing. Oh, my gosh. I know. We'll see you tomorrow. Thank you. Oh, my gosh. Oh, my gosh.